### James M. Turner *vs.* James M. Ellis.

A party who acquires the rights of the heirs at law, is entitled to make the same defence in a suit which the law would allow them to make.

It is only under certain contingencies that land can be sold by an administrator for the purpose of paying debts.

The rule or mode of proceeding, when the personal estate is insufficient to pay the debts of the estate, is prescribed in the statute, and the same rule is to be observed when an estate shall be declared insolvent.

The statute, in effect, prescribes the issue to be tried, — whether the personal estate is insufficient to pay the debts of the estate; and if sufficient, then no sale of the land is to be ordered.

The proof which it was proposed in this case to introduce, to show the estate had become insolvent through the neglect or omission of the administrator, was certainly relevant to the issue.

An administrator must inventory all the property which may come into his hands, or which he may know to be in the possession of another, and part of the estate. *Held*, the proof on this point should have been admitted.

If the personal estate become insufficient to pay the debts, in consequence of a

devastavit or neglect of duty by the administrator, the heirs at law can insist on this as a defence against the sale of the land.

In such a case the creditors' remedy would be by an action on the bond of the administrator.

No suit can be maintained against an administrator, after four years from the grant of his letters of administration. Hutch. Code, 830.

The same defence can be made against an allowance of a claim by the probate court, or commissioner of insolvency, which could be made to a suit instituted on it.

The administrator should have answered the interrogatories relative to the correctness of the claim.

On appeal from the probate court of Lawrence county.

At the May term of the probate court of Lawrence county, 1847, J. M. Ellis, administrator of D. B. Cooper, deceased, petitioned the court for an order to sell certain lands alleged to be the property of the estate, upon the ground that the personal property was insufficient to pay the debts. Citations were issued in accordance with the statute, and James M. Turner appeared and contested the application, and at the September term, 1847, the court dismissed the petition, upon the ground that there was sufficient personal property belonging to the estate to pay all the debts.

At the March term, 1849, Ellis filed another petition, with two exhibits, praying that the estate might be declared insolvent, and a decree made for the sale of the land. The estate was declared insolvent, and citation issued to all persons interested, to show cause why the lands should not be sold, in accordance with the petition of Ellis. James M. Turner again answered, contesting the application, and averred that he was interested, having purchased the land in controversy from the heirs of D. B. Cooper; that the decree of insolvency had been improperly made, and that there was sufficient personal property to pay the debts. He further objected, because an application to sell the land to pay debts had been previously rejected by the court; because, by lapse of time, and want of diligence in the premises, the heirs of David Cooper had entered into the lands, and delivered them for a valuable consideration to said Turner; because the claims upon which the supposed insolvency was predicated, are not just and legal.

The answer further stated that there was a suit then pending in the superior court of chancery, in which it was sought to obtain a decree against the estate of William Cooper, deceased, who was the ancestor of D. B. Cooper; and in the event, that said suit should result in a decree to render the estate of William Cooper liable thereon, the land in question would become liable therefor, as William Cooper was the grantor to D. B. Cooper, and his liability, if any should be decreed against him, was older, and fixed before the conveyance by him to D. B. Cooper.

The answer further alleged, that at a former term of the court, one Jesse Maxwell applied for and obtained an order for the sale of the lands in controversy, as the property of William Cooper, deceased.

Ellis had been appointed administrator more than four years prior to filing his petition, and a portion of the claims stated in his exhibits as claims against the estate, had not been reduced to judgment.

Turner produced in evidence a deed from the legal heirs of D. B. Cooper, conveying the lands to him. He also read the record, showing the order for the sale of the same lands by Maxwell, as administrator of William Cooper, the sale in accordance therewith, and deed from Maxwell to Benjamin Cooper, and a deed of conveyance of the lands in controversy, and all of his personal property, from William to D. B. Cooper.

Edward L. Bowen proved the pendency of a suit in the superior court of chancery, in which it was sought to charge the estate of William Cooper on a forthcoming bond, forfeited in 1839.

The respondent, Turner, offered to interrogate the administrator in relation to an item of the schedule, and exhibit of insolvency, which was in his favor, and proposed to prove by him that said item was a claim against the estate of William Cooper; but the court refused to allow him to do so.

The respondent proposed to introduce proof to attack the report and decree of insolvency, which proof was rejected by the court.

Solomon Sutton proved that he had delivered a negro boy to James Sills, formerly collector of the estate of D. B. Cooper,

which boy had not been inventoried by the administrator; he offered to prove by Sutton and Elisha Andrews, that personal property, consisting of several slaves, was in the county of Hancock; that they belonged to the estate of David B. Cooper, and might have been reached by the administrator, since his appointment as such; which evidence the court rejected. The negroes alluded to by Sutton and Andrews, were not accounted for by the administrator. Bills of exceptions were tendered and signed.

*J. F. & G. P. Foute,* for appellant.

1st. The court below erred in granting an order of sale at a term of the court subsequent to that at which said court had refused to grant such order; and this was error, especially in the case at bar, because the record shows that the petition filed by the administrator at said subsequent term, when the prayer of the petition was granted, did not present any different state of facts from those which had been presented to the court when the order of sale had been refused. See *Scott* v. *Searles,* 5 S. & M. 25.

2d. The court erred in granting the order of sale, because there was no showing, as required by law, that the estate had been properly declared insolvent, and commissioners of insolvency appointed to report, &c. The insufficiency of the personal estate to pay debts, or the insolvency of the estate, must first be shown before the real estate could be sold to pay debts.

3d. The court erred in rejecting the testimony of Sutton and Andrews, which went to show, that Ellis, by the exercise of ordinary diligence, could have realized for the estate more than sufficient personal property to pay all debts. If at any time during his administration, the administrator had in possession, or could have obtained possession of sufficient personal property to pay all debts, it would preclude him from having an order to sell the real estate. The descent of the lands being cast by law upon the heirs, and they having sold their interest to Turner, he was substituted to all their rights, and could directly oppose any effort to subject the lands to the payment of the debts of the ancestor. The proof offered was competent

and legitimate, and the ruling of the probate court a palpable violation of the rules of evidence.

*Wm. Vannerson*, for appellant,

Contended for the same position; and further argued, that the court erred in refusing the testimony offered to impeach and attack the report of insolvency and decree thereon. It may be insisted that the decree of insolvency cannot be opened, or otherwise controlled, except by appeal. The answer is, that such a decree is, in its nature, interlocutory, and does not become final until the action of the court is had upon the application to sell the land, which was based upon the supposition that the personal estate was insufficient to pay debts.

The one negro, proved by Sutton to have gone into the hands of Sills, the collector of the estate of David B. Cooper, was sufficient of itself to have shown the decree of insolvency incorrect and untrue; and thus to have prevented the decretal order for the sale of the land, at least until the administrator should satisfactorily show to the court what disposition had been made of said negro.

The decree was erroneous, because the same lands had been administered upon in a like proceeding by Jesse Maxwell, as the administrator of William Cooper, and sold to Benjamin Cooper.

*James M. Ellis*, appellee, in person.

Mr. Justice FISHER delivered the opinion of the court.

On the 26th of March, 1849, James M. Ellis, as administrator of the estate of David B. Cooper, deceased, filed in the probate court of Lawrence county, a petition, accompanied with two exhibits; one showing the amount of the personal estate, and the other the debts then owing by said deceased. It also contained a description of certain lands, of which it alleged the deceased died seized, and estimated the same to be worth $300; from which it appeared that the estate was insolvent. The clerk of said court was thereupon appointed a commissioner, to receive and report the claim exhibited against said

estate; and the same declared insolvent. A citation was awarded, notifying all persons interested in said lands to appear at a certain term of the court, and show cause why the same should not be sold to pay the debts of the intestate.

The appellant at the proper time appeared and answered said petition, stating that he had purchased the said lands from the heirs at law of David B. Cooper, deceased, for a valuable consideration, and insisting that at the time the appellee administered on said estate, and for a considerable time thereafter, there was other personal property of the intestate, which the administrator, with ordinary diligence, might have reduced to possession, &c.

On the trial, the appellant introduced a witness, who proved that, in the year 1843, one Sills was the collector of the estate of the deceased, and that he, witness, placed in the possession of said collector a certain slave as part of the estate of the intestate. This slave does not appear in the inventory. He also offered to prove that there were four other slaves, known to the administrator, in Hancock county, for several years after he had administered on said estate, part of the intestate's estate, which might have been recovered by the administrator. This proof the court refused to receive, or rather allow the appellant to make. Other proof to the same effect was offered, but rejected by the court.

The letters of administration to the appellee, bear date the 24th of March, 1845, from which it will appear, that four years had elapsed before the estate was declared insolvent.

This statement of the case is deemed sufficient to present the only questions necessary to be noticed.

The question to be decided is, whether the heir at law, when an administrator shall petition the probate court to sell the lands of the intestate to pay debts, can show that the insufficiency of the personal estate for that purpose, resulted from a neglect of duty, or waste of the assets by the administrator.

The appellant having acquired the rights of the heirs by a purchase from them, is entitled to make, in this controversy, any defence which the law would allow them to make; and it will, therefore, be treated as a case between the administrator and the heir at law. It is only under a certain contingency, that

lands can be sold by an administrator for the purpose of paying debts. The statute has prescribed the rule or mode of proceeding, when the personal estate shall be insufficient for this purpose; and the same rule is to be observed when the estate shall be declared insolvent, as the effect in both cases is the same—to take the land from the heir.

By our law, the personal estate stands first chargeable with the payment of debts, which must be satisfied before the claims of legatees or distributees can be admitted. But we will proceed to notice the regulation of the law on the question to be decided. After stating how the administrator shall proceed to subject land to the payment of debts, when the personal estate shall for that purpose be insufficient, the statute says that " the orphans' court shall at the time specified in the citation, or at such other time as it may then appoint, hear and examine the allegations and proofs of the said executor or administrator, and of other persons interested. And if the said court on such examination, shall find that the personal estate of such testator or intestate is not sufficient to pay his or her debts, the said court shall direct" the sale of the land, &c. Hutch. Code, 667. The court is required to examine the allegations and proofs of the administrator, and of other persons interested; and for what purpose? to ascertain whether the personal estate is sufficient to pay the debts of the estate; if sufficient, then no sale of the land is ordered; if not sufficient, then the court orders a sale.

The statute, in effect, prescribes the issue to be tried. It is whether the personal estate is insufficient to pay the debts of the estate, and the parties to this issue are the administrator, who avers the insufficiency of the personal estate, and those interested in the lands sought to be charged, who aver the affirmative of the proposition, or sufficiency of the personal estate. The court is to hear the allegations and proofs. This implies the right of both parties to make allegations, and sustain them by proofs, and a duty on the court to decide the case according to the weight of evidence introduced before it.

Having ascertained what was the issue in the court below, we will next proceed to notice the relevancy of the evidence offered on the part of the appellant. We, of course, can say

nothing as to the effect of the evidence, because the court refused to permit the witness to testify, but only speak of its relevancy to the issue.

Suppose the facts which the appellant proposed to establish, had appeared by an inventory furnished by the administrator, could a doubt exist as to the solvency of the estate? We think not. The appellant proposed to prove, in effect, that the estate had become insolvent, through the neglect or omission of duty on the part of the administrator. This proof was certainly relevant to the issue. The law has plainly prescribed the duties of administrators. They must inventory all property which may come into their hands, or which they may know to be in the possession of another person. The proof was offered to be made that there were certain slaves, known to the administrator, in the possession of another person, and part of the estate. This proof was relevant to the issue.

But without multiplying reasons, we have no hesitation in deciding the law to be, that if the personal estate become insufficient to pay debts in consequence of a *devastavit* or neglect of duty by the administrator, that the heir at law can insist on this as a defence against the sale of the lands descended. In such case, the creditor's remedy would be by an action on the bond of the administrator, and the judgment of the probate court in refusing a sale of the land, would be equivalent to deciding that the personal estate was sufficient to pay the debts of the intestate, and had been wasted by the administrator.

But this point as to the effect of the judgment of the probate court, is not necessarily involved, and we, therefore, express no binding opinion on the subject. Another question may be noticed. It appears from the record, that four years had elapsed before the estate was declared insolvent. Some of the claims reported by the administrator as debts against the estate, do not appear to have been reduced to judgments; and we are not informed as to the time when the judgments were recorded, as to those reported. No suit can be maintained against an administrator, after four years from the grant of his letters of administration. Hutch. Code, 830.

And whatever would be a good defence against a suit on a

claim, would be equally good against an allowance by the probate court, or commissioner of insolvency. This rule, of course, would not apply to the administrator's own claim, as he could not sue himself.

We see no good reason why the administrator should refuse to answer the interrogatories proposed, as to the correctness of his claim, as he has to prove its correctness by his own oath, as well as the testimony of witnesses, if it be an open account; and the statute gives commissioners of insolvency the right to examine a creditor on oath.

Judgment reversed; cause remanded to be proceeded in according to this opinion.